LINDA AMES
11920 NW 35th Ave,
VANCOUVER WA 98685
Tel: 360 931-1797
E-mail: ameslinda66@gmail.com

Plaintiff Pro Se

FILED

MAR 10 2023

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

LINDA AMES,

Case No.:

CV23   1080

Plaintiff,

v.

WELLS FARGO BANK, N.A.

Defendants.

**COMPLAINT FOR VIOLATION OF 12 CFR part §1026.10(a) and Cal. Civ. Code § 2941.7 FOR FAILURE TO TIMELY RECORD A SATISFACTION OF MORTGAGE; UNIFORM DECEPTIVE TRADE PRACTICES ACT ADOPTED, NO (§24-5-0.5-1 TO 10)**
**PENDANT STATE CLAIMS**
**WRONGFUL FORECLOSURE, FRAUD, CONCEALMENT, MISREPRESENTATION, AND CIVIL CONSPIRACY**

COMES NOW, the Plaintiffs, LINDA AMES hereby sues the Defendants, WELLS FARGO

BANK, N.A.; and alleges:

INTRODUCTION

---

1. This is an action for money damages for the wrongful foreclosure of the real property owned by LINDA AMES in fee simple and located at 10810 NW 13TH PL, VANCOUVER, 98685, (COUNTY OF CLARK), and more fully described as follows: Abbreviated Legal Description: LOT 1 SP2-502 .80A, RECORDS OF CLARK COUNTY.  SITUATE IN THE COUNTY OF CLARK, STATE OF WASHINGTON

2. Plaintiff owned her home, and was making payments on her loan mod for a whole year when Wells Fargo as Servicer told her to stop making her payments. They had collected the MPI (Exhibit 2, Paragraph 10), satisfying the principal and interest on the mortgage. Instead of recording a satisfaction of mortgage on this government backed mortgage as required under 12 CFR 1024.17(i)(4) and 12 CFR 1026.36(c)(3), they continued to bill Ames. As the Court is now aware, and Congress has known since 2010 when they held hearings, the servicers were pushing borrowers into default so that the servicer could collect fraudulently imposed fees, like BPO's, Appraisals, and inspection fees for inspections which never occurred. There was a problem with modifying the loans. If the servicer modified the loan, then they had a problem with the investor collecting those fees from the monthly payments of the borrower. They had to put the borrower into default so they could foreclose, sell and collect the fraudulently imposed fees. And, more importantly, if the investor has already been paid in full from the MPI (Exhibit 2, Paragraph 10), the servicer could collect the principal and interest as well as their fake fees.  Ames was targeted for this behavior by Wells, and lost her home to a fraudulent foreclosure.  It was not until December of last year that Ames found out that Wells double collected on the mortgage, first from the MPI paying off the investor, and then second from the wrongful sale of her home.  Wells was so greedy that they did not even have an

auction of her property since Ames informed them she wanted to appear at the auction with her father who planned on bidding and winning back the property. They cancelled the auction and then simply came to California, prepared and then recorded the deed on a sale that did not happen. It is so commonly known that Wells was telling borrowers to stop making payments, and the fact that Congress held hearings on the fraudulently imposed servicer fees, this court can take judicial notice of those facts and cannot under any circumstances disbelieve Ames horrific tale, being the direct victim of those horrific crimes that almost cost her life to cancer, stress and caused the destruction and loss of her very profitable home business.

## PARTIES AND JURISDICTION

3. Plaintiffs' title to the above-described property was derived from the Deed dated March 30th, 2005, from Tony R. Eigsti and Colleen M. Windell to Linda M. Ames in the official records, Document ID DOCC3966103, in the Public Records of Clark County, Washington. A copy of said Statutory Warranty Deed is attached as Exhibit "1".

4. The Defendant, Wells Fargo Bank, NA has its principal place of business in this state, the sale was signed in this state, and the conduct which caused the harm was generated by Wells Fargo in this State.

5. Since the Defendant's principal place of business is 420 Montgomery Street, San Francisco, CA 94104, this is the proper court and venue for this action PURSUANT to 28 U.S. Code § 1332 - Diversity of citizenship; amount in controversy; costs.

6. There is diversity between the parties because Linda Ames, Plaintiff, is a resident of Clark County, in the State of Washington and Wells Fargo's principal place of business is in the

State of California, County of San Francisco, and the amount in controversy exceeds $75,000.

7. Defendant Wells Fargo Bank NA was the loan servicer for HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR16, conspired with and acted and did the wrongful acts complained of on their behalf.

8. Defendant Wells Fargo Bank, NA is a nationally registered bank, and has listed their agent for service of process to be on an officer of the branch located at 420 Montgomery Street, San Francisco, CA 94104.

## BACKGROUND FACTS COMMON TO ALL CAUSES OF ACTION

9. Criminally defunct lender, SIERRA PACIFICA MORTGAGE CO. INC., recorded a mortgage (Exhibit "2") on the property Document 4148891, recorded on April 6th, 2006, in the official records of this County.

10. On December 8th, 2011, after HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR16 was no longer licensed to do business in this state, nevertheless recorded an assignment of deed of trust from Wells Fargo Home Mortgage to HSBC Bank USA, NA; and what's more, is that the true holder and owner of the note and mortgage is not HSBC BANK USA, NA but claimed to be a trust for which HSBC Bank USA, NA is a Trustee.

11. Neither HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH

CERTIFICATES SERIES 2006-AR16 nor HSBC are registered to do business in the State of Washington, were not licensed to do business in that state, were banned from doing business there, and did business there unlawfully.

12. On December 8th, 2011, there was an ASSIGNMENT OF DEED OF TRUST RECORDED BY WELLS FARGO HOME MORTGAGE, listing SIERRA PACIFIC MORTGAGE CO INC as the Grantor and HSBC BANK USA NA, as the Trustee, Document 4813726, Exhibit 3.

13. Said Corporate assignment was executed by Leisa Jefferson, purporting to be authorized by MERS to sign for Sierra Pacific Mortgage Company. That information is FALSE.

14. In fact, Leisa Jefferson was hired as a Loan Servicing Specialist at Wells Fargo Home Mortgage in Saint Paul, Minnesota.

15. That she has NO AUTHORITY, ACTUAL OR IMPLIED and NO AUTHORITY was prior recorded in the official records, to execute documents on behalf of MERS.

16. That Wells Fargo assigned the interest to itself, without authority to do so, and without being a bona fide purchaser for value.

17. The assignment was fraudulent, and the recording of the assignment constitutes a fraudulent recording of a document in the official records of the County, a felony.

18. When the property was purchased, it was Federally backed and insured.

19. FHA requires an Up Front Mortgage Insurance Premium and a mortgage insurance premium (MIP) to be paid instead. 12 U.S. Code § 1709

20. The Plaintiff paid for MIP for the lifetime of the mortgage.

21. The FHA Up-Front Mortgage Insurance Premium (UFMIP) was paid in full at closing time.

22. The entire amount was paid at once and Plaintiff and all federally backed mortgagors cannot partially finance the UFMIP, which is a standard closing cost for FHA mortgages. https://www.fha.com/fha_article?id=1373. 12 U.S. Code § 1709

23. On March 26, 2012, AFTER WELLS FARGO had already recorded the assignment of Deed of Trust, as set forth above, they then recorded an appointment of Trustee to Quality Loan Service Corp. of Washington, Document 4841188; and as a result of the fact that WELLS FARGO no longer had any right to do so, the appointment of Trustee was void and unlawful.

24. On December 5th, 2012, after having no lawful right to do so, QUALITY LOAN SERVICE CORP OF WASHINGTON recorded a NOTICE OF TRUSTEE SALE, Document 4959410; said document being a slander on the title of the Plaintiff, and further constitutes the filing of a false document in the official records of the County, a felony in this State.

25. Thereafter, on April 9th, 2013, a NOTICE OF DISCONTINUANCE OF TRUSTEE SALE in the name of QUALITY LOAN SERVICE CORP OF WASHINGTON, was recorded in the official records of the County, Document ID number 4959583, cancelling the sale.

26. Nonetheless, Defendant claimed to have proceeded with the sale, and recorded in the official records a sale to the Defendant in violation of the law, in direct contradiction to the notice of discontinuance of the sale, and thus any transfer was void, recording a void and fraudulently obtained TRUSTEE'S DEED UPON SALE, DOCUMENT ID 5035077 D, recorded on December 3, 2013, resulting from a cancelled sale.

27. Plaintiff seeks a declaratory order finding that the note and mortgage were void for having been originated by a defunct entity who was closed by the State for doing business

unlawfully, and said unlawful conduct actually and proximately caused the Plaintiff to suffer damages from the fraudulent origination of the loan; that the sale was void, and striking from the public records the TRUSTEE'S DEED UPON SALE, DOCUMENT ID 5035077 D, recorded on December 3, 2013.

28. In or around 2009, Plaintiff was told by Wells Fargo employees that she was offered a loan modification of $3020.09 MONTH and after 12 months of perfect payments that loan modification would be permanent.

29. On or about the December 15th, 2022, Defendant HSBC in response to a qualified written request, provided the computer notes regarding the loan modification.

30. The Plaintiff, during her review of the logs, then discovered the statements made to her were FALSE.

31. The produced records show a plethora (more than 70) fraudulently imposed charges, including BPO, Service Fees, Inspection Fees, and appraisals, all of which do not benefit the borrower and were imposed to push the borrower into default.

32. This court can take judicial notice that this was a well known practice because even Congress had hearings where Congress knew in 2009 that servicers were pushing borrowers into default.[1]

---

[1] PROBLEMS IN MORTGAGE SERVICING FROM MODIFICATION TO FORECLOSURE
https://www.govinfo.gov/content/pkg/CHRG-111shrg65258/html/CHRG-111shrg65258.htm

Chairman Dodd. Just quickly, yes or no. I suspect everyone is going to agree with what Senator Bennet said. Is that true?
Mr. Arnold. Yes, sir.
Mr. Levitin. Yes.
Mr. Lowman. Yes.
Ms. Thompson. Yes.

---

33. That the true facts were that when the loan was forced into default by Wells Fargo, it collected the insurance for the principal and interest and satisfied the mortgage to the investors, and then all funds from the proceeds from the foreclosure including the principal, interest, and bogus servicing fees were then kept by Wells Fargo and concealed at all times from Plaintiff, Linda Ames.

34. Linda Ames exercised extraordinary efforts to learn this information and the Defendant concealed the same until December of 2022, when Plaintiff learned the truth.

35. That because of the concealment of the information, the statute of limitations was tolled.

36. That Wells denied the loan modification in violation of 12 CFR 1024.41(d) when they made Ames stop making her payments on the promise of a loan modification and then

---

Chairman Dodd. Again, here we are----

Ms. Thompson. If I may, we spent at the Center a lot of time last year trying to answer that question, why it is that servicers have failed to modify, and produced this report looking very carefully at the legal and financial incentives that they face, and the key charts from that are reproduced in the testimony submitted today.

...

Chairman Dodd. I agree with that.

Ms. Thompson. That is one. Two is there are complicated rules imposed by the credit rating agencies and in the pooling and servicing agreements that make it--that reduce repayment of servicer expenses when there is a modification. So when there is a foreclosure, servicers get repaid off the top before the investors get anything, all of their fees and advances, all of those broker price opinions, their title work, their foreclosure fees, all of that gets paid back directly to the servicers when the home is sold in a post-foreclosure sale. The repayment of those advances is delayed and much less clear if there is a modification, and so that is almost certainly a significant disincentive in many cases to perform modifications and there ought to be guidance issued that would clarify that you can get repaid from the pool when you do a modification for your advances so that servicers would get their legitimate advances repaid.

The third thing is we have talked about the *role of fees in pushing people into foreclosure and encouraging servicers to have people in default because then there are these extra fees that they can tack on that they can then put in their pocket to offset the costs of foreclosure.* And so we believe that you need to regulate those default fees to reduce the incentives to put homeowners into foreclosure.

Chairman Dodd. Thank you very much.

Senator Akaka.

---

**COMPLAINT FOR VIOLATION OF 12 CFR PART §1026.10(A) AND CAL. CIV. CODE § 2941.7**                                                                              **8**

denied the same so they could collect the charges they fraudulently imposed on her account.

37. Wells specifically delayed the loan modification process so they could meet the 120 days delinquent requirement of "Prohibition on Foreclosure Referral – 12 CFR 1024.41(f)" which says: "A servicer cannot make the first foreclosure notice or filing for any judicial or non-judicial process until the borrower is more than 120 days delinquent. The commentary states that the first notice or filing refers to any document required to be filed with a court, entered into a land record, or provided to a borrower. These include a foreclosure complaint, a notice of default, or a notice of election and demand."

38. Additionally, 12 CFR part §1026.10(a) and Cal. Civ. Code § 2941.7 both required the immediate satisfaction of mortgage, and if more than 30 days passed, the Plaintiff was entitled to damages suffered as a result of the failure to record the satisfaction when they collected the MPI coverage and paid off the investors in full.

39. That this is a strict liability statute and once the mortgage was fully satisfied, the Plaintiff only need prove causation and damages since the statute was clearly designed to protect the borrowers from the failure of the lender to record a satisfaction of mortgage in a timely fashion.

40. That after she was forced into default, and the mortgage was fully satisfied, the Defendant began a campaign of fraud billing her for amounts which were neither due nor owing, including, but not limited to, principal, interest, BPO, inspection fees, appraisal fees, and fraudulent foreclosure fees and costs.

41. The imposition of these fraudulent fees made Wells liable for its failure to provide an accurate payoff balance amount upon the borrower's request, as required by 12 CFR

1026.36(c)(3) and its failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by 12 CFR 1024.39.

42. There is ample evidence that the Defendant not only instructed Ames to stop making her mortgage payments to cost her the permanent loan modification they gave her, but added fees and costs to her loan while promising her a new modification, dragging out the mod process for years, knowing that they intended to take her home by force in order to collect their fraudulently imposed fees and profit from the principal and interest that was already paid by the insurance she purchased.

43. According to the logs provided by the Defendant, they said in material part: "ONCE PYMTS MADE ON TIME IN FULL, WILL SEND TO THE INVESTOR FOR TEMP MOD AND PIGGYBACK APPROVAL THERE IS NO GRACE PERIOD W/ SPECIAL FORBEARANCES.

44. That the Plaintiff made the trial payments on the belief that her loan modification was permanent and the logs acknowledge receipt of her cashier's checks. (HSBC 000574)

45. That the logs further show that investor guidelines prevented her from being qualified for an affordable loan modification, but she was not told of the same, instead, Wells Fargo delayed the loan modification process from 2009 through 2013, all the while knowing that she was not going to receive an affordable modification. HSBC 000629.

46. That even though Wells Fargo in 2009 negotiated a loan modification with the Plaintiff, and she paid the timely trial payments for the loan modification, but after more than 12 months of timely payments, the Defendants purported predecessor in interest no longer honored the loan modification.

47. That Plaintiff made her trial payments for more than 12 months, and when she requested that the loan modification be made permanent, Wells Fargo Bank, NA instructed her to stop making her payments so they could grant her a loan modification. See Exhibit 10, where on 5/1/2012 David Schol instructed Plaintiff to stop making payments to go through the loan modification process.

48. That the records disclosed in the end of 2017, the records clearly show that on 12/30/09 18:05:01 JPN LIQUIDATION LOSS MITIGATION INBOUND CALL **LIQPHT*** BRRW CLLD TO CHK STTS ON LOAN MOD I ADV THAT IT HAD BEEN APPROVED AND SHE JUST NEEDS TO KEEP MAKING THOSE MONTHLY PAYMENTS ON TIME. SHE ADV SHE WOULD I EMAILED NEG TO CONTACT. This is translated to mean that Wells Fargo admits that in the end of December 2009, they told the Plaintiff that she received a permanent loan modification.

49. In January of 2010 Plaintiff learned that her credit report reflected false information and wanted her credit repaired. 01/11/10 17:10:22 R2D BRWR STATED THAT SHE WANTED TO KNOW WHO CAN CLEAN HER CREDIT UP BECAUSE SHE WAS TOLD THAT HER CREDIT WOULD NOT BE AFFECTED. ADVISED BRWR THAT WE COULD GIVE THE WRITTEN CORR FAX NUMBER. BRWR DOES NOT UNDERSTAND WHAY SHE WAS PUT ON A INTREST ONLY LOAN, AND HER CREDIT WAS DAMAGED. BRWR STATED THAT IF SHE NEEDED TO GET AN ATTORNEY SHE WOULD. HSBC 000568

50. Thereafter, in September 2010, Defendants purported predecessor in interest (Wells Fargo Bank, NA acting as servicer for the trust) instructed the Defendant to stop making her

payments so she would be in arrears and qualify for a loan modification, then refused to grant a new modification on the basis that Plaintiff was in arrears in her payments.

51. That Wells Fargo Bank, NA conspired with the trust and investors in that trust to commit a fraudulent sale after providing the Plaintiff with notice of cancellation of the same, depriving her of her rights under the loan agreement, and her rights of due process and equal protection; and by commission of a felony in recording false documents in the public records, as prohibited by Washington Statutes.

52. Defendant Wells Fargo failed to inform Linda Ames, Plaintiff, that when Linda Ames was first placed into default, the UFMIP (Up Front Mortgage Insurance Premium) had been collected and satisfied both the principal and interest in the mortgage, and thus all the charges, including the principal, interest, and fraudulently imposed charges like the Inspection fees, BPO's, appraisals, and foreclosure and legal fees, all imposed on the account were fraudulent.

53. That the Defendant, Wells Fargo was unjustly enriched in the amount according to proof but estimated to be in excess of $770,000.

54. That as a result of multiple convictions against Wells Fargo for this precise conduct, the Plaintiff only need prove causation and damages, since the violation of

55. Wells Fargo, was indicted and ordered to share in the 25 billion dollar settlement with the 50 attorney generals and the US Attorney General along with the Office of the Controller of the Currency for that precise conduct, and was ordered as part of the consent decree not to commit such conduct and to compensate the Plaintiff and others for committing this heinous act, which caused irreparable harm to the creditworthiness of the Plaintiff and

further caused severe and irreparable harm to the value of the Plaintiffs property, and further causing the unlawful theft of the Plaintiffs homestead home.

56. That in direct violation of the consent decree, predecessor in interest Wells Fargo did record false documents in the public record, including the appointment of a trustee when Wells Fargo no longer had any interest in the subject property nor any lawful right to do so.

57. Plaintiff then discovered in the end of the 2022 that the loan in issue was NOT WELLS OWNED as of 8/26/2013 – the logs admit COL 081313 OGO DACC OR DAC2 **NOT WELLS OWNED**, DC-LOAN TYPE. EXHIBIT 9 – HSBC 000595.

58. Plaintiff further recently learned that on or about March 25th, 2013 03/25/13 14:07:11 CMS LCO REVIEW PROC ID: CMS ISSUE: DOCS RECEIVED FOR REVIEW RESOLUTION:OKAY TO PROCEED WITH FCL SALE AS SCHEDULED ON 04/05/2013. MORTGAGOR A3P ADVISED TO FAX DOCS IN WITHIN 48 HOURS FROM 03/22/13. ONLY OPTION IS LIQUIDATIONS OR REINSTATEMENT DUE TO INVESTOR GUIDELINES LOAN NOT ELIGIBLE FOR A PERMANENT LOAN MODIFICATION REFERENCES:LIV, NOTS, SPOC EMAIL UPLOADED TO LIV:YES See Exhibit 8 - HSBC 000522.

59. That the conduct of Wells Fargo further committed fraud in that Washington state law requires the beneficiary listed on the deed of trust and its assignments to be the owner of the promissory note. Neither of the Defendants are the notes owners.

60. The Defendants claim of "beneficiary" in the corporation of the deeds of trust as shown in CLARK County files 4813726 and 4148891 were without substance, and were void as

they did not conform to the true requirement of "beneficiary" according to Washington State code as shown in RCW 61.24.

61. Plaintiff is also aware that in order to claim title and perform a trustee sale the "beneficiary" must show proof that the beneficiary is the owner of any promissory note, according to Washington State code as shown in RCW 61.24.030(7)(a).

62. The fraudulent conduct of the Plaintiff proves they were not the owners of the note or mortgage and the mortgage was satisfied in full by insurance paid for by Ames.

63. That as an actual and proximate cause of this misconduct, Ames suffered greatly and dearly.

64. Financially, Ames actually and proximately suffered the loss of her home, in amount of $770,000; loss of equity in her home as a result of the foreclosure process; severe emotional distress; obtained and suffered cancer from the stress caused by the situation; lost her home business and future earnings of three million dollars; suffered great and irreparable harm, loss of sleep, anger, upset, grief, aggravation, all in an amount according to proof but in the event of default, a total of six million dollars.

65. Because the Defendant was guilty of fraud and malice, the Plaintiff is further entitled to exemplary damages based on the net worth of Wells Fargo, but a minimum of 18 million dollars or proof for a total of 24 million dollars, court costs and post judgment interest from the date of judgment at the legal rate of interest or ten percent, whichever is the maximum permitted post judgment interest permitted by law, attorney's fees according to proof; and such other and further relief as the court deems just and adequate.

## FIRST CAUSE OF ACTION

## WRONGFUL FORECLOSURE

**COMPLAINT FOR VIOLATION OF 12 CFR PART §1026.10(A) AND CAL. CIV. CODE § 2941.7**

66. Plaintiff incorporates paragraphs 1 through 60, inclusive, herein as though set forth herein in full.

67. That at the time of the purported sale to the Defendant, the notice of sale had been cancelled by the fraudulently appointed trustee; and said corporate assignment was executed by Leisa Jefferson, purporting to be authorized by MERS to sign for Sierra Pacific Mortgage Company. That information is FALSE. In fact, Leisa Jefferson was hired as a Loan Servicing Specialist at Wells Fargo Home Mortgage in Saint Paul, Minnesota. That she has NO AUTHORITY, ACTUAL OR IMPLIED and NO EXPRESS AUTHORITY is found recorded in the official records, to execute documents on behalf of MERS.

68. That Wells Fargo assigned the interest to itself, without authority to do so, and without being a bona fide purchaser for value.

69. The assignment was fraudulent, and the recording of the assignment constitutes a fraudulent recording of a document in the official records of the County, a felony AND in direct conflict with the strict laws adopted by the CFPB prohibiting the use of fraudulently prepared documents.

70. That said sale was fraudulent and void ab initio and there were irregularities in the execution of the documents; the fact that the sale was cancelled prior to the time it proceeded; and the buyer was the trust who is not registered to do business in Washington, and is doing business there unlawfully; and if that were not enough, the trustee was also not licensed to do business there, and is doing business there unlawfully.

71. The foreclosure was wrongful because it was based on already satisfied obligations (MPI paid the principal and interest) and it was based on collecting fees which were wrongfully

imposed, including charges for services which were never rendered; overcharges for services which were rendered; and intended to collect for fees and costs which were neither due nor owing.

72. Plaintiff, like hundreds of thousands of other borrowers, were told to STOP making their modification payments in order to put her into default, and then sit for years on pins and needles awaiting another offer of a loan mod which includes those wrongfully imposed charges.

73. In this instance, WELLS continued to check her bank account balance, and when they knew she would not be able to afford to reinstate, refused to grant her a loan modification.

74. It is the very definition of extortion supported by courts who regularly permit the imposition of those wrongful charges while even Congress recognizes them to be fraudulent.

75. Wells Fargo did not comply with any of their obligations, promises or even the consent judgment;

76. The foreclosure caused financial harm to PLAINTIFF, caused physical injury to the Plaintiff, and caused her to suffer great and emotional personal emotional distress which manifested itself in cancer brought on by stress, and cost her the successful home based business she had built.

77. That Defendant has published false information in the official records, falsely claiming amounts were due which were neither due nor owing.

78. That as an actual and proximate cause of said conduct, Financially, Ames actually and proximately suffered the loss of her home, in amount of $770,000; loss of equity in her home as a result of the foreclosure process; severe emotional distress; obtained and

suffered cancer from the stress caused by the situation; lost her home business and future earnings of three million dollars; suffered great and irreparable harm, loss of sleep, anger, upset, grief, aggravation, all in an amount according to proof but in the event of default, a total of six million dollars.

79. Because the Defendant was guilty of fraud and malice, the Plaintiff is further entitled to exemplary damages based on the net worth of Wells Fargo, but a minimum of 18 million dollars or proof for a total of 24 million dollars, court costs and post judgment interest from the date of judgment at the legal rate of interest or ten percent, whichever is the maximum permitted post judgment interest permitted by law, attorney's fees according to proof; and such other and further relief as the court deems just and adequate.

80. WHEREFORE plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

## VIOLATION OF UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

81. Plaintiff adopts and incorporates herein paragraphs 1 through 60 as if fully set forth below.

82. It is noteworthy that punitive damages are properly awarded where the Plaintiff can allege and prove "intentional tort, fraud, deceit, false representation, gross negligence or oppression mingled with the controversy. ".

83. On February 28, 2013, Wells Fargo entered into an amended consent agreement with the Office of the Comptroller of the Currency ("OCC") relating to allegations of unsafe and unsound practices in residential mortgage servicing, in *In the Matter of Wells Fargo, N.A*

84. Wells Fargo also entered into the National Mortgage Settlement Agreement with 49 state attorneys general in March 2013.

85. The amended consent agreement required that servicers, including Wells Fargo, provide $9.3 billion in assistance to borrowers, including $3.6 billion in cash payments and $5.7 billion in other assistance such as loan modifications and forgiveness of deficiency judgments.

86. Plaintiff asserts further that Wells Fargo signed a Servicer Participation Agreement ("SPA") that articulated its duties to properly consider distressed borrowers for foreclosure prevention alternatives.

87. Plaintiff alleges that Wells Fargo is "obligated to evaluate eligible borrowers" under the Home Affordable Modification Program ("HAMP") "calculation logistics," which he claims are "popularly known as waterfalls."

88. The HAMP Tier 1 calculation logic is designed to secure a modified mortgage payment that is less than or equal to 31% of the borrower's front-end, post-modification debt-to-income ("DTI") ratio."

89. The calculation logic manipulates certain variables including interest rate, forbearance amounts, and maturity terms," following which the "proposed modified payment is analyzed under the Net Present Value ('NPV') Test."

90. The NPV Test is " the lynchpin of the American homeowner's dream," and asserts that it "evaluates many variables including but not limited to: the probability of default, the probability of self cure and the net present value of money."

91. In 2008, Congress passed the Emergency Economic Stabilization Act, Pub.L. No. 110–343, 122 Stat. 3765, codified at 12 U.S.C. § 5201, et seq.

92. This law included the Troubled Asset Relief Program ("TARP"), "which required the Secretary of the Treasury, among many other duties and powers, to 'implement a plan that

seeks to maximize assistance for homeowners and . . . encourage the servicers of the underlying mortgages . . . to take advantage of . . . available programs to minimize foreclosures.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (quoting 12 U.S.C. § 5219(a)),

93. Commencing from the initial mortgage by an unlicensed lender, to the present, WELLS FARGO BANK, N.A engaged in various deceptive and unfair trade practices in violation of the Federal and California Deceptive and Unfair Trade Practices Acts, by claiming to have a public auction where none transpired.

94. The foreclosure was wrongful because it was based on already satisfied obligations (MPI paid the principal and interest) and it was based on collecting fees which were wrongfully imposed, including charges for services which were never rendered; overcharges for services which were rendered; and intended to collect for fees and costs which were neither due nor owing.

95. Defendant is guilty of violations of various statutes, including Indiana Code Title 32. Property § 32-28-1-2; Indiana Code 24-5-0.5-3. Unfair, abusive, or deceptive acts, omissions, or acts prohibited; enumeration of deceptive acts; CFPB rules regarding loan modifications; consent decree against US Bank and other State and Federal Laws too numerous to identify here.

96. The misconduct makes the Defendants guilty of the Martin Act and Executive Law § 63(12) program and therefore in direct violation of the Unfair and Deceptive Trade Practices Act as they are regulated under the federal laws enforced by the CFPB, California Attorney General, US Attorney General, OCC, the Attorney General for New York and the SEC.

97. That Wells Fargo Bank, N.A and the co-conspiring defendants are all guilty of mail fraud, wire fraud, perjury, and recording false documents in the official records of this county, a FELONY.

98. That Wells Fargo Bank, N.A promised the PLAINTIFF, LINDA AMES to avoid loss of her home through loss mitigation as evidenced by the rules of the CFPB and state and federal laws prohibiting the misconduct alleged herein.

99. That WELLS FARGO BANK, N.A and the remaining co-conspirators conspired and aided and abetted the commission of multiple acts of fraud, including, but not limited to, executing and recording false documents; signing documents without actual pre-recorded authority to do so; doing business as a closed trust without registering to do business here; acting as a debt collector without registering as a debt collector (since they claim to have acquired the mortgage while it was in arrears); by separating the note and mortgage, making the mortgage a nullity, and such other conduct incorporated herein.

100.    That WELLS FARGO BANK, N.A did not perform in good faith; and

101.    The deceptive and unfair acts and practices are to the injury and prejudice of PLAINTIFF, LINDA AMES and have resulted in damages thereto.

102.    That as an actual and proximate cause of said conduct, Financially, Ames actually and proximately suffered the loss of her home, in amount of $770,000; loss of equity in her home as a result of the foreclosure process; severe emotional distress; obtained and suffered cancer from the stress caused by the situation; lost her home business and future earnings of three million dollars; suffered great and irreparable harm, loss of sleep, anger, upset, grief, aggravation, all in an amount according to proof but in the event of default, a total of six million dollars.

103.    Because the Defendant was guilty of fraud and malice, the Plaintiff is further entitled to exemplary damages based on the net worth of Wells Fargo, but a minimum of 18 million dollars or proof for a total of 24 million dollars, court costs and post judgment interest from the date of judgment at the legal rate of interest or ten percent, whichever is the maximum permitted post judgment interest permitted by law, attorney's fees according to proof; and such other and further relief as the court deems just and adequate.

### THIRD CAUSE OF ACTION

### CONVERSION

104.    Plaintiff incorporates paragraphs 1 through 60, inclusive, herein as though set forth herein in full.

105.    That as a result of the fraudulent transfer of the title to the Plaintiff's home to the Defendant without lawful authority to do so, and after cancelling the sale, the Plaintiff is entitled to a finding that the Defendant converted the property to its own use.

106.    Financially, Ames actually and proximately suffered the loss of her home, in amount of $770,000; loss of equity in her home as a result of the foreclosure process; severe emotional distress; obtained and suffered cancer from the stress caused by the situation; lost her home business and future earnings of three million dollars; suffered great and irreparable harm, loss of sleep, anger, upset, grief, aggravation, all in an amount according to proof but in the event of default, a total of six million dollars.

107.    Because the Defendant was guilty of conversion, fraud and malice, the Plaintiff is further entitled to exemplary damages based on the net worth of Wells Fargo, but a minimum of 18 million dollars or proof for a total of 24 million dollars, court costs and post judgment interest from the date of judgment at the legal rate of interest or ten percent,

whichever is the maximum permitted post judgment interest permitted by law, attorney's fees according to proof; and such other and further relief as the court deems just and adequate.

108.    WHEREFORE plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

## FRAUD

109.    Plaintiff incorporates paragraphs 1 through 60, inclusive, herein as though set forth herein in full.

110.    Plaintiff alleges that the Defendant Wells Fargo Bank, NA, on or about 5/1/2012 (and discovered on 12/15/2022) defrauded Plaintiff as follows:

## INTENTIONAL OR NEGLIGENT MISREPRESENTATION

111.    Defendant Wells Fargo made representations of material fact as follows:

112.    On 5/1/2012 Wells Fargo instructed Plaintiff to stop making payments on a permanent loan modification where she had made timely payments for one year as a means of obtaining a better loan modification.

113.    On December 5th, 2012, after having no lawful right to do so, QUALITY LOAN SERVICE CORP OF WASHINGTON recorded a NOTICE OF TRUSTEE SALE, Document 4959410; said document being a slander on the title of the Plaintiff, and further constitutes the filing of a false document in the official records of the County, a felony in this State.

114.    Thereafter, on April 9th, 2013, a NOTICE OF DISCONTINUANCE OF TRUSTEE SALE in the name of QUALITY LOAN SERVICE CORP OF

WASHINGTON, was recorded in the official records of the County, Document ID number 4959583, cancelling the sale.

115.    Nonetheless, Defendant claimed to have proceeded with the sale, and recorded in the official records a sale to the Defendant in violation of the law, in direct contradiction to the notice of discontinuance of the sale, and thus any transfer was void, recording a void and fraudulently obtained TRUSTEE'S DEED UPON SALE, DOCUMENT ID 5035077 D, recorded on December 3, 2013, resulting from a cancelled sale.

116.    Defendant required the Plaintiff to purchase MPI (Exhibit 2, Paragraph 10) insurance when she acquired the property and made her pay for said insurance in full at the time of closing of escrow.

117.    Defendant represented that if the Plaintiff defaulted for any reason in making a mortgage payment, said insurance would take effect and satisfy the principal and interest of the mortgage, relieving the Plaintiff of any further obligation.

118.    The true facts were that Plaintiff paid for the insurance, and the Defendant collected the insurance proceeds, and proceeded with foreclosure anyway, concealing the recovery of the proceeds, double recovering, and becoming unjustly enriched at the expense of the Plaintiff, and until December of 2022, the Plaintiff did not learn that the insurance proceeds were paid.

119.    The individual has made a statement or provided information, in this case, the statement is that the Trustee could sell the property after the sale had been cancelled, and further Defendant represented to the Plaintiff and the public officials in getting them to change the official records, that Defendant was the bona fide purchaser for value.

120.   The statement was false, as Defendant was not the bona fide purchaser for value; the sale was fraudulently held after it was cancelled; by the Defendant who was fraudulently assigned a deed of trust by means of a robo-signed assignment which was executed without the actual authority of the Defendant to do so; and aid Corporate assignment was executed by Leisa Jefferson, purporting to be authorized by MERS to sign for Sierra Pacific Mortgage Company. That information is FALSE.   In fact, Leisa Jefferson was hired as a Loan Servicing Specialist at Wells Fargo Home Mortgage in Saint Paul, Minnesota.   That she has NO AUTHORITY, ACTUAL OR IMPLIED and NO AUTHORITY recorded in the official records, to execute documents on behalf of MERS. That Wells Fargo assigned the interest to itself, without authority to do so, and without being a bona fide purchaser for value. The assignment was fraudulent, and the recording of the assignment constitutes a fraudulent recording of a document in the official records of the County, a felony.

121.   The Defendant either knew the statement was false or did not know whether it was true or false when making it.

122.   The statement concerned a fact that was material to the individual's rights and benefits under Title 50 RCW, which includes the ownership of the Plaintiff's homestead home.

123.   The individual made the statement with the intent that the department would rely on it when taking action.

124.   Financially, Ames actually and proximately suffered the loss of her home, in amount of $770,000; loss of equity in her home as a result of the foreclosure process; severe emotional distress; obtained and suffered cancer from the stress caused by the

situation; lost her home business and future earnings of three million dollars; suffered great and irreparable harm, loss of sleep, anger, upset, grief, aggravation, all in an amount according to proof but in the event of default, a total of six million dollars.

125.     Because the Defendant was guilty of fraud and malice, the Plaintiff is further entitled to exemplary damages based on the net worth of Wells Fargo, but a minimum of 18 million dollars or proof for a total of 24 million dollars, court costs and post judgment interest from the date of judgment at the legal rate of interest or ten percent, whichever is the maximum permitted post judgment interest permitted by law, attorney's fees according to proof; and such other and further relief as the court deems just and adequate. WHEREFORE plaintiff prays for relief as set forth below.

126.     When the Defendant made the representations, they knew they were false, or, defendant had no reasonable ground for believing the representations were true.

127.     Defendant made the representations with the intent to defraud and induce the Plaintiff to act as described below, including paying for the insurance, including stop making payments on her loan modification with the promise of a better one, and including believing that the sale was cancelled as promised, and believed they were true.

128.     Plaintiff acted in justifiable reliance upon the truth of the representations.

**CONCEALMENT**

129.     Defendant concealed or suppressed material facts as follows.

130.     Defendant concealed the recovery of MPI (Exhibit 2, Paragraph 10) satisfying the mortgage when the Plaintiff went into default, satisfying the mortgage in full, and instead of recording a satisfaction as required by California, Washington and Federal Law, the

Defendant instead proceeded with foreclosure falsely claiming that the mortgage was unpaid and not satisfied.

131.     Defendant concealed or suppressed the material facts Defendant was bound to disclose and or by telling the Plaintiff other facts to mislead the Plaintiff and prevent the Plaintiff from discovering the concealed or suppressed facts.

132.     On 5/1/2012 Wells Fargo instructed Plaintiff to stop making payments on a permanent loan modification where she had made timely payments for one year as a means of obtaining a better loan modification.

133.     On December 5th, 2012, after having no lawful right to do so, QUALITY LOAN SERVICE CORP OF WASHINGTON recorded a NOTICE OF TRUSTEE SALE, Document 4959410; said document being a slander on the title of the Plaintiff, and further constitutes the filing of a false document in the official records of the County, a felony in this State.

134.     Thereafter, on April 9th, 2013, a NOTICE OF DISCONTINUANCE OF TRUSTEE SALE in the name of QUALITY LOAN SERVICE CORP OF WASHINGTON, was recorded in the official records of the County, Document ID number 4959583, cancelling the sale.

135.     Nonetheless, Defendant claimed to have proceeded with the sale, and recorded in the official records a sale to the Defendant in violation of the law, in direct contradiction to the notice of discontinuance of the sale, and thus any transfer was void, recording a void and fraudulently obtained TRUSTEE'S DEED UPON SALE, DOCUMENT ID 5035077 D, recorded on December 3, 2013, resulting from a cancelled sale.

136.    Defendant required the Plaintiff to purchase MPI (Exhibit 2, Paragraph 10) insurance when she acquired the property and made her pay for said insurance in full at the time of closing of escrow.

137.    Defendant represented that if the Plaintiff defaulted for any reason in making a mortgage payment, said insurance would take effect and satisfy the principal and interest of the mortgage, relieving the Plaintiff of any further obligation.

138.    The true facts were that Plaintiff paid for the insurance, and the Defendant collected the insurance proceeds, and proceeded with foreclosure anyway, concealing the recovery of the proceeds, double recovering, and becoming unjustly enriched at the expense of the Plaintiff, and until December of 2022, the Plaintiff did not learn that the insurance proceeds were paid.

139.    Defendant represented that the sale was cancelled, then proceeded to record a deed of sale which Wells Fargo prepared and signed in the State of California.

140.    Defendant concealed or suppressed these facts with the intent to defraud and induce the Plaintiff to act as described below.

141.    At the time Plaintiff acted, Plaintiff was unaware of the concealed or suppressed facts and would not have taken the action if Plaintiff had known the facts.

**PROMISE WITHOUT INTENT TO PERFORM**

142.    Defendant made a promise about a material matter without any intention of performing it as follows:

143.    Defendant sold the Plaintiff MPI (Exhibit 2, Paragraph 10) insurance representing that if she defaulted, the mortgage insurance would satisfy the mortgage.

144.     The mortgage insurance was paid collected, but NOT credited to the account as required by both state and federal law.

145.     Defendant promised to cancel the sale, and then transferred title nonetheless.

146.     On 5/1/2012 Wells Fargo instructed Plaintiff to stop making payments on a permanent loan modification where she had made timely payments for one year as a means of obtaining a better loan modification.

147.     On December 5th, 2012, after having no lawful right to do so, QUALITY LOAN SERVICE CORP OF WASHINGTON recorded a NOTICE OF TRUSTEE SALE, Document 4959410; said document being a slander on the title of the Plaintiff, and further constitutes the filing of a false document in the official records of the County, a felony in this State.

148.     Thereafter, on April 9th, 2013, a NOTICE OF DISCONTINUANCE OF TRUSTEE SALE in the name of QUALITY LOAN SERVICE CORP OF WASHINGTON, was recorded in the official records of the County, Document ID number 4959583, cancelling the sale.

149.     Nonetheless, Defendant claimed to have proceeded with the sale, and recorded in the official records a sale to the Defendant in violation of the law, in direct contradiction to the notice of discontinuance of the sale, and thus any transfer was void, recording a void and fraudulently obtained TRUSTEE'S DEED UPON SALE, DOCUMENT ID 5035077 D, recorded on December 3, 2013, resulting from a cancelled sale.

150.    Defendant required the Plaintiff to purchase MPI (Exhibit 2, Paragraph 10) insurance when she acquired the property and made her pay for said insurance in full at the time of closing of escrow.

151.    Defendant represented that if the Plaintiff defaulted for any reason in making a mortgage payment, said insurance would take effect and satisfy the principal and interest of the mortgage, relieving the Plaintiff of any further obligation.

152.    The true facts were that Plaintiff paid for the insurance, and the Defendant collected the insurance proceeds, and proceeded with foreclosure anyway, concealing the recovery of the proceeds, double recovering, and becoming unjustly enriched at the expense of the Plaintiff, and until December of 2022, the Plaintiff did not learn that the insurance proceeds were paid.

153.    Defendant represented that the sale was cancelled, then proceeded to record a deed of sale which Wells Fargo prepared and signed in the State of California.

154.    Defendant Wells Fargo's promise without any intention of performance was made with the intent to defraud and induce Plaintiff to rely upon it and to act as described below.

155.    At the time Plaintiff acted, the Plaintiff was unaware of the defendant's intention not to perform the promise.

156.    Plaintiff acted in justifiable reliance upon the promise.

157.    In justifiable reliance upon defendant's conduct, Plaintiff was induced to act as follows:

158.    Defendant paid for the MPI (Exhibit 2, Paragraph 10) insurance in full and up front.

159.     Defendant believed that the sale was cancelled and did not take further legal action to stop an already cancelled sale when the true facts were that the Defendant simply did not have a sale and transferred title Washington Title to itself here in California.

160.     Because of Plaintiff's reliance upon Defendant's conduct, Plaintiff has been damaged as follows:

161.     Financially, Ames actually and proximately suffered the loss of her home, in amount of $770,000; loss of equity in her home as a result of the foreclosure process; severe emotional distress; obtained and suffered cancer from the stress caused by the situation; lost her home business and future earnings of three million dollars; suffered great and irreparable harm, loss of sleep, anger, upset, grief, aggravation, all in an amount according to proof but in the event of default, a total of six million dollars.

162.     Because the Defendant was guilty of fraud and malice, the Plaintiff is further entitled to exemplary damages based on the net worth of Wells Fargo, but a minimum of 18 million dollars or proof for a total of 24 million dollars, court costs and post judgment interest from the date of judgment at the legal rate of interest or ten percent, whichever is the maximum permitted post judgment interest permitted by law, attorney's fees according to proof; and such other and further relief as the court deems just and adequate.

## FIFTH CAUSE OF ACTION

## CIVIL CONSPIRACY

163.     Plaintiff incorporates paragraphs 1 through 83, inclusive, herein as though set forth herein in full.

164.     Defendant conspired with Wells Fargo Bank, NA, the Trustee, HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET

SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR16, the individual members of the Trust, Sierra Pacific Mortgage Co., Inc, LSI Title Agency, and Quality Loan Service Corp of Washington, and Mr. David Schol, who told the Plaintiff to stop making her payments, (Exhibit 10) to commit the criminal and civil acts complained of and incorporated herein; Said Corporate assignment was executed by Leisa Jefferson, purporting to be authorized by MERS to sign for Sierra Pacific Mortgage Company. That information is FALSE. In fact, Leisa Jefferson was hired as a Loan Servicing Specialist at Wells Fargo Home Mortgage in Saint Paul, Minnesota. That she has NO AUTHORITY, ACTUAL OR IMPLIED and NO EXPRESS AUTHORITY is found recorded in the official records, to execute documents on behalf of MERS. That Wells Fargo assigned the interest to itself, without authority to do so, and without being a bona fide purchaser for value. The assignment was fraudulent, and the recording of the assignment constitutes a fraudulent recording of a document in the official records of the County, a felony.

165.    Financially, Ames actually and proximately suffered the loss of her home, in amount of $770,000; loss of equity in her home as a result of the foreclosure process; severe emotional distress; obtained and suffered cancer from the stress caused by the situation; lost her home business and future earnings of three million dollars; suffered great and irreparable harm, loss of sleep, anger, upset, grief, aggravation, all in an amount according to proof but in the event of default, a total of six million dollars.

166.    Because the Defendant was guilty of fraud and malice, the Plaintiff is further entitled to exemplary damages based on the net worth of Wells Fargo, but a minimum of 18 million dollars or proof for a total of 24 million dollars, court costs and post judgment

interest from the date of judgment at the legal rate of interest or ten percent, whichever is the maximum permitted post judgment interest permitted by law, attorney's fees according to proof; and such other and further relief as the court deems just and adequate. WHEREFORE plaintiff prays for relief as set forth below.

## SEVENTH CAUSE OF ACTION

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court:

1. GRANT JUDGMENT in favor of Plaintiff, Linda Ames and against Wells Fargo Bank, NA on all counts of the complaint;

2. Grant judgment in favor of Linda Ames and against Wells Fargo Bank, NA for the loss of her home, in amount of $770,000; loss of equity in her home as a result of the foreclosure process; severe emotional distress; obtained and suffered cancer from the stress caused by the situation; lost her home business and future earnings of three million dollars; finding she suffered great and irreparable harm, loss of sleep, anger, upset, grief, aggravation, loss of income, loss of future income, and general and special damages, all in an amount according to proof but in the event of default, a total of six million dollars.

3. Because the Defendant was guilty of violation of statute, fraud and malice, the Plaintiff is further entitled to exemplary damages based on the net worth of Wells Fargo, but a minimum of 18 million dollars or proof for a total of 24 million dollars

4. Post judgment interest from the date of judgment at the legal rate of interest or ten percent, whichever is the maximum permitted post judgment interest permitted by law

5. Grant the Plaintiff its costs according to a costs bill;

6. Grant the Plaintiff its attorney's fees pursuant to a costs bill;

7.   Such other and further relief as the court deems just and adequate.

Respectfully Submitted,

Dated: February 23__, 2023          ___/s/ Linda Ames_____
                                    **LINDA AMES**: Plaintiff Pro Se
                                    11920 NW 35 Avenue
                                    VANCOUVER WA 98685
                                    Tel: 360 931-1797 (360) 931-1797
                                    E-mail: ameslinda66@gmail.com
                                    Plaintiff Pro Se

## VERIFICATION

I declare under penalty of perjury that I have read the foregoing, and it is true and correct, except as to those matters which are based on information and belief, and as to those matters, I believe them to be true; and I executed this Verification on:

Dated: February 23__, 2023          ___/s/ Linda Ames_____
                                    **LINDA AMES**: Plaintiff Pro Se
                                    11920 NW 35 Avenue
                                    VANCOUVER WA 98685
                                    Tel: 360 931-1797 (360) 931-1797
                                    E-mail: ameslinda66@gmail.com
                                    Plaintiff Pro Se

**CERTIFICATE OF SERVICE**

I CERTIFY that I mailed a copy of this Motion to the Defendants at:

HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR16, AND ALL OTHER INTERESTED PARTIES


LANE POWELL, PC
1420 FIFTH AVENUE
SUITE 4200
PO BOX 91302
SEATTLE, WA 98111-9402


     Respectfully Submitted,

Dated: February 23__, 2023            /s/ Linda Ames
                                        **LINDA AMES**: Plaintiff Pro Se
                                        11920 NW 35 Avenue
                                        VANCOUVER WA 98685
                                        Tel: 360 931-1797
                                        E-mail: ameslinda66@gmail.com
                                        Plaintiff Pro Se